UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRIEN WILLIAMS,

          Petitioner,

    -vs-

JAMES CONWAY, Superintendent


          Respondent.

_____

**DECISION AND ORDER**

**No. 08-CV-0359T**

## I. Introduction

*Pro se* petitioner Terrien Williams ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 15, 2003, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of one count each of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25 [3]), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02 [1]), and two counts of Robbery in the First Degree (Penal Law § 160.15 [1], [2]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

The charges arise from an incident that occurred at 44 East Utica Street in the City of Buffalo on August 31, 2001, which resulted in the shooting death of Michael Johnson ("the victim").

Joy Johnson was at home at 44 East Utica Street in the early morning hours of August 31, 2001. Trial Transcript [T.T.] 693-702. Her husband, Michael Johnson, was sleeping on a couch in the living room and her goddaughter, Charnell Mitchell ("Mitchell"), was asleep in the Johnsons' bedroom. T.T. 696-700. Joy Johnson was doing laundry in the bathroom when, at approximately 2:00 a.m., she heard a loud banging noise at the front door and the sound of wood splitting. T.T. 702. When she looked to ascertain the cause of the commotion, she saw a man with a gun in his hand running down the hallway toward her. T.T. 704. The man grabbed Joy Johnson by the hair, hit her on the right side of her head with the gun, pushed her into the bedroom where Mitchell was sleeping, and demanded money. T.T. 705.

As the assailant forced Joy Johnson and Mitchell, who had been awoken by the noise, down the hallway toward the front of the house, she heard her husband ask what was happening. T.T. 709. She then heard Petitioner say, "here he is. He's in here." T.T. 710. When Joy Johnson was approximately two steps from her kitchen, she heard a gun shot. T.T. 711. She looked into the living room and saw Petitioner, with a smoking shotgun in his hand, standing over her husband's body, which was lying on the living room floor. T.T. 714-715. Joy Johnson looked directly at Petitioner and was able to see his face. T.T. 818. Joy Johnson recognized Petitioner as someone from the neighborhood whom she had

previously reported to the police because he was on her porch. T.T. 775.

As the two men ran out the front door, the assailant who had hit her with the gun, grabbed her husband's cell phone and some money, which the victim kept in a fish bowl. T.T. 721-722. Joy Johnson noticed a third man, Kenny Lawrence ("Lawrence"), who was standing outside on her porch, several feet from the front door. T.T. 723.

Joy Johnson and Mitchell both called 911, and the police arrived shortly thereafter with an ambulance. T.T. 729-730. Joy Johnson accompanied homicide detectives from the Buffalo Police Department to police headquarters, while her husband was transported to the hospital. T.T. 731-732. The victim died at the hospital from a gunshot wound. T.T. 732.

The following day, shortly before noon, Joy Johnson was the passenger in a vehicle, driven by family members, when she saw Petitioner standing on the street. T.T. 734-735. She alerted the driver who pulled the vehicle over to the side of the road and called the police. T.T. 736-737. When the police arrived approximately ten minutes later, Joy Johnson identified Petitioner as the man who killed her husband. T.T. 737-738. Shortly thereafter, Petitioner was taken into custody. Subsequently, Joy Johnson identified Petitioner in a photo array and two line-ups. T.T. 738-739.

On August 15, 2003, Petitioner was indicted, along with co-defendant Lawrence, with one count of felony murder in the second degree and two counts of robbery in the first degree. He was individually charged with one count each of intentional murder in the second degree and criminal possession of a weapon in the third degree.

Prior to trial, a joint Huntley/Rodriquez[1] hearing was conducted on behalf of Petitioner's co-defendant, at which Petitioner appeared with counsel[2] and waived both the Huntley and Wade hearings. Hr'g Mins. [H.M.] 2-4. At that time, Petitioner's counsel expressed concerns that admission of the co-defendant's statement would give rise to a Bruton[3] issue, thereby triggering Petitioner's right to seek severance. H.M. 5-6. Subsequently, the court, upon denial of co-defendant Lawrence's motion for suppression of his statement, ordered that Petitioner's case be severed from Petitioner's case. Co-defendant Lawrence was tried separately and was acquitted of all charges. T.T. 887.

A jury trial commenced on September 16, 2002 before the Hon. Richard C. Kloch. Petitioner testified in his own defense,

_____

[1] People v. Huntley, 15 N.Y.2d 72 (1965); People v. Rodriquez, 79 N.Y.2d 445 (1992).

[2] Petitioner was originally represented by attorney Paul Hurley, who moved for pre-trial relief in the form of Huntley and Wade hearings. Prior to trial, attorney Paul Hurley was replaced by attorney Joseph Terranova, who waived both the Huntley and Wade hearings previously requested. H.M. 2-4.

[3] Bruton v. United States, 391 U.S. 123 (1968).

and denied any involvement in the crime. Petitioner's mother, brother, aunt and grandmother all testified as alibi witnesses. These individuals all testified that Petitioner was at home on the evening the crime was committed. T.T. 1155-1289.

Petitioner was found guilty as charged of all counts of the indictment, except one (intentional murder). He was subsequently sentenced to an indeterminate term of imprisonment of 20 years to life on the murder conviction and to 20 year determinate terms on the two robbery convictions, to be served concurrent with each other and to the sentence imposed on the murder conviction, as well as an indeterminate term of 2 1/3 to 7 years on the criminal possession of a weapon conviction, to run concurrently with the other sentences imposed. Sentencing Mins. [S.M.] 18.

Petitioner's judgment of conviction was affirmed by the Appellate Division, Fourth Department on April 28, 2006. People v. Williams, 28 A.D.3d 1059 (4th Dept. 2006). Petitioner was granted leave to appeal, and the New York Court of Appeals affirmed the judgment of conviction on February 15, 2007. People v. Williams, 8 N.Y.3d 854 (2007).

No collateral motions were filed.

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) ineffective assistance of trial counsel; and (2) prosecutorial misconduct.

Pet. ¶ 22A-B (Dkt. #1); Supplement to Pet. of Habeas Corpus (Dkt. #3).

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan

v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. Wainwright v. Sykes, 433 U.S. 72 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); accord Jones v. Stinson,

229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750; see also Levine, 44 F.3d at 126; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). A petitioner may establish cause by pointing to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. See Reed v. Ross, 468 U.S. 1, 12 (1984). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate

that failure to do so will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

## IV. Petitioner's Claims

## 1. Ineffective Assistance of Trial Counsel

Petitioner argues that he was deprived of his Sixth Amendment right to the effective assistance of counsel based on, *inter alia*, the following: (1) trial counsel's failure to seek suppression of Petitioner's photo array and line-up identifications and the 911 tapes; and (2) trial counsel's failure to subpoena witnesses. Pet. ¶ 22B. The Court of Appeals denied this claim on the merits.[4] See Williams, 8 N.Y.3d at 855-56.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a

---

[4]     The Court of Appeals ruled as follows: "We similarly reject defendant's alternative claim that he was denied effective assistance of counsel. Defense counsel registered numerous objections throughout the trial, conducted rigorous cross examination, and, among other things, moved for both a mistrial and a new trial, albeit on grounds not relevant here. As the record reflects zealous if not consistent advocacy, this contention is without merit." Williams, 8 N.Y.3d at 855-56.

probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

The Court finds that Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

**(A) Failure to Seek Suppression of Photo Array and Line-Up Identifications and 911 Tapes**

Petitioner argues that he received constitutionally ineffective assistance from his trial attorney because counsel failed to seek suppression of his photo array and line-up identifications and the 911 tapes. Pet. ¶ 22B. This claim is meritless.

Because Petitioner's ineffective assistance claim is based on an alleged failure to raise a Fourth Amendment issue, "he must also show 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" Mosby v. Senkowski,

470 F.3d 515, 519 (2d Cir. 2006) (quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986)).  In this case, Petitioner has not endeavored to make any such showing.  <u>See, e.g.</u>, <u>Mosby</u>, 470 F.3d at 519-21 & n. 3 (analyzing the merits of the suppression claim in a way that suggests that the court interpreted "meritorious" to mean that the suppression claim would actually succeed); <u>Maldonado v. Burge</u>, 697 F.Supp.2d 516, 528 (S.D.N.Y. 2010) ("The weight of the authority and the logic of <u>Kimmelman</u> suggest that petitioner must show, at minimum, a reasonable probability that the suppression motion would succeed, and quite possibly that [ ] the suppression motion would in fact succeed.").

The record reflects that Petitioner's first attorney (Hurley) moved, prior to trial, for <u>Huntley</u> and <u>Wade</u> hearings to challenge, respectively, the voluntariness of Petitioner's statements to police and Joy Johnson's identifications of Petitioner.  With respect to Petitioner's statements to police, the record reflects that attorney Terranova (who replaced Hurley) waived a <u>Huntley</u> hearing after reviewing Petitioner's statements and determining they were exculpatory in nature.  H.M. 3.  Counsel's conduct, therefore, was reasonable under the circumstances and his decision to forego a hearing on this matter could not have prejudiced the outcome of the case.  Similarly, with respect to Joy Johnson's identifications of Petitioner, the record reflects that counsel waived a <u>Wade</u> hearing because Joy Johnson's identification of

Petitioner on a public street was not police arranged and her photo array and line-up identifications were confirmatory in nature. H.M. 3-4. Moreover, the record further reflects that prior to waiving the _Wade_ hearing, counsel required the prosecutor to submit an affidavit that the photo array and line-up identifications of Petitioner by Joy Johnson were confirmatory and that he reserved the right to cross-examine her at trial –- which he did at length -- as to the circumstances of her identification at the time the crime was committed. _Id._; T.T. 743-873. Thus, counsel's decisions to waive the hearings were both strategic in nature and reasonable under the circumstances.

With regard to the admission of the 911 tapes from the early morning hours of August 31, 2001, the record reflects that these tapes were not incriminating to Petitioner. The tapes revealed that the victim had been shot and that his family members had called the police for assistance. T.T. 6-7. That the victim had been shot and/or that his family members had called the police for assistance was not disputed by the defense. Counsel's decision to forego suppression of these tapes, therefore, was not unreasonable and could not have prejudiced the outcome of the trial since they did not incriminate Petitioner as the shooter.

**(B) Failure to Subpoena Witnesses**

Petitioner faults trial counsel for failing to subpoena "necessary witnesses." Pet. ¶ 22B. Petitioner does not indicate

who these "necessary witnesses" are, nor has he suggested what these witnesses would have testified to had they been subpoened and had testified. Because Petitioner has not demonstrated how the testimony of these "necessary witnesses" would have proven beneficial to his defense, he has failed to establish that any prejudice resulted from counsel's decision. See Strickland, 466 U.S. at 694; see also Fearon-Hales v. United States, 08 Civ. 6547, 2010 U.S. Dist. LEXIS 80434, *13 (dismissing Petitioner's ineffective assistance of counsel claim based on counsel's failure to call a witness where Petitioner failed to demonstrate how witness's testimony would have assisted his defense). Petitioner's claim, therefore, fails.

Overall, the Court finds that Petitioner received effective assistance of trial counsel. The record reflects that counsel zealously represented Petitioner through all phases of his trial by filing the proper motions, putting forth a cogent theory of defense, cross-examining the prosecution's witnesses, making the appropriate objections throughout trial, and delivering articulate opening and closing statements. Accordingly, the state court's determination of this claim was neither contrary to nor an unreasonable application of settled Supreme Court law. The claim is denied.

## 2.  Prosecutorial Misconduct

Petitioner argues that prosecutorial misconduct denied him his constitutional right to a fair trial.  To support this claim, he cites numerous instances where, he argues, the prosecutor impermissibly attacked defense witnesses, denigrated the defense, and misled the jury.  Pet. ¶ 22A.  Petitioner raised this claim to the Court of Appeals, and the court determined that the majority of the instances of alleged conduct were unpreserved, but that, in any event, Petitioner was not deprived of his right to a fair trial as a result of prosecutorial misconduct.  See Williams, 8 N.Y.3d at 855.  Here, because the state court determination does not indicate which claims were unpreserved, the decision is construed as one on the merits to which AEDPA deference applies.  See Harris v. Reed, 489 U.S. 255, 263 (1989) (finding that procedural default does not bar consideration of federal claim on direct or habeas review unless last state court rendering judgment in case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks and citation omitted); see also Warren v. Ercole, No. 07 CV 3175, 2007 U.S. Dist. LEXIS 86828 (E.D.N.Y. Nov. 27, 2007) (prosecutorial misconduct claim not procedurally barred where Appellate Division stated claim was "largely unpreserved" and proceeded to decide merits).

Here, even if the prosecution's conduct, in some instances, was inappropriate, it is not the type of "egregious misconduct,"

Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974) generally required to give rise to a constitutional claim.  Comments and questions by a prosecutor, even if "undesirable" or "universally condemned," do not amount to constitutional error warranting habeas relief unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted).  In determining whether a prosecutor's improper remarks have caused "substantial prejudice" resulting in a denial of due process, the Court considers "the severity of the misconduct[,] the measures adopted to cure the misconduct[,] and the certainty of conviction absent the improper statements."  Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam)).

Initially, the Court notes that Petitioner's case required the jury to assess the credibility of the murder victim's widow and the contradictory testimony of Petitioner's family members.  Given this emotionally-charged backdrop, both counsel were extremely zealous in presenting evidence to support their case.  Nonetheless, the record reflects that the trial judge promptly quelled both counsels' contentious remarks, as he instructed and emphasized to the jury some fifteen times throughout the trial that statements, arguments, questions, and comments made by the lawyers were not evidence.  T.T. 15-16, 22, 27-28, 36, 350, 808, 875-876, 977, 978,

981, 1136, 1373, 1393, 1455, 1459.  The Court now turns to an analysis of the specific instances of alleged prosecutorial misconduct that Petitioner has cited in his habeas petition.

**(A)  Cross-Examination of Defense Witness Reid**

Petitioner argues that he was denied his constitutional right to a fair trial when the prosecutor impermissibly "attack[ed]" the testimony of defense witness LaDonna Reid ("Reid").  Pet. ¶ 22A. This claim is meritless.

Petitioner cites several instances on cross-examination where the prosecutor questioned the witness's ability to tell the truth by asking her if she had "changed sides,"[5] commenting that God would have to sort out her conflicting statements, and asking her if she wished to apologize to the victim's wife "for not having the courage to stand up and tell this jury the truth."  T.T. 1084, 1084-1085, 1104, 1147-1148.  Though the prosecutor's conduct in these instances was arguably improper, Petitioner has not shown that his questions and/or comments, when taken together with the trial court's curative instructions to the jury, resulted in unfairness.  See e.g., Jodhan v. Ercole, 07 Civ. 9263 (RMB) (JCF), 2008 U.S. Dist. LEXIS 24827 (S.D.N.Y. March 28, 2008) (rejecting Petitioner's prosecutorial misconduct claim where prosecutor asked a number of questions that prompted defense counsel to object and

---

[5]     Reid testified as a witness for the prosecution at Lawrence's trial.  Subsequently, she recanted her testimony, and testified as a witness for the defense at Williams' trial.

each objection was eventually sustained or otherwise addressed by an instruction from the court in the presence of the jury). In the first instance, the prosecutor's question prompted an objection from defense counsel, which was sustained, although the witness's answer was not stricken from the record. T.T. 1084-1085. In the second instance, although defense counsel did not object to the prosecutor's comment, the court stated that the prosecutor's comment was an "editorial comment" and instructed him to move on to his next question, which he did. T.T. 1104-1105. And, in the third instance, defense counsel promptly objected to the prosecutor's question, and the objection was sustained on argumentative grounds. T.T. 1147-1148.

Moreover, the Court notes that the intensity of the prosecutor's cross-examination of Reid was primarily prompted by defense counsel's attack on the character of Joy Johnson during his direct examination of Reid, coupled with Reid's unwillingness to answer the prosecutor's questions.[6] The record reflects that a large portion of Reid's testimony on direct examination focused on her allegation that Joy Johnson sold crack cocaine from her apartment. T.T. 1018-1029, 1040-1049, 1051-1057. Accordingly, Petitioner has not demonstrated that the prosecutor's cross-

---

[6] Outside the presence of the jury, the court admonished Reid that she could be held in contempt if she continued to verbally "joust" with the prosecutor. T.T. 1117-1118.

examination of defense witness Reid deprived him of his constitutional right to a fair trial.

### (B)   Cross-Examination of Defense Witness Robinson

Petitioner argues that the prosecutor's improper cross-examination of defense witness Rierre Robinson ("Robinson"), Petitioner's brother and alibi witness, deprived him of his constitutional right to a fair trial.   In particular, he argues that the prosecutor misled the jury when questioning Robinson about his grand jury testimony.   Pet. ¶ 22A.   Petitioner's claim is belied by the record.

Petitioner cites an instance on cross-examination where  the prosecutor asked Robinson, in regard to a portion of a statement Robinson had made in the grand jury proceeding, "[y]ou don't think you can be caught in a lie; isn't that true?"  T.T. 1276.  Before the witness could answer, defense counsel objected, and the court explained that the question was argumentative and instructed the prosecutor to rephrase it.  T.T. 1277.  The prosecutor complied with the court's instruction, and clarified several times, in the presence of the jury, that his question was in reference to only a portion of a statement that the witness had made in the grand jury proceedings.  T.T. 1279-1281.  In response to the prosecutor's rephrased question, the witness indicated that he had made the statement and that such statement was correct. T.T. 1279-1281.  In the event that the prosecutor's line of questioning may have been

confusing to the jury, any potential confusion was eliminated by the court's summary of the correct version of the witness's grand jury testimony.  T.T. 1281.  Accordingly, Petitioner has not demonstrated that the prosecutor's conduct in regard to the cross-examination of defense witness Robinson deprived him of his constitutional right to a fair trial.

**(C)  Comments on Summation**

Petitioner alleges that the remarks made by the prosecutor in summation deprived him of his constitutional right to a fair trial. Petitioner argues that the prosecutor improperly denigrated his defense by using such words as "lies," "fiction," "fabrication," and "Disneyworld" to characterize his alibi theory.  Pet. ¶ 22A. Petitioner's claim is meritless.

Here, the prosecutor's comments were not improper under the circumstances; they were fair comment on the evidence and were responsive to the comments made by defense counsel.  See Osorio v. Conway, 496 F. Supp. 2d 285, 301 (S.D.N.Y. July 17, 2007) (statements made "during summation are permissible if they constitute a fair comment on the evidence at trial and reasonable inference therefrom, or a fair response to remarks made by the defense counsel during summation") (citation and internal quotation marks omitted)).  In his summation, defense counsel attacked the People's witnesses' credibility, and portrayed the defense witnesses as honest individuals who would not lie to protect a

family member.  Defense counsel focused on Joy Johnson's testimony, stating that "some people would say Joy Johnson is a liar" and suggesting that portions of her story were simply not believable. T.T. 1387.  Additionally, defense counsel characterized Reid as a courageous individual who testified despite the possibility of being prosecuted for perjury and arrested for violating probation. T.T. 1380.  The prosecutor's comments, which were made with respect to the evidence presented at trial and in response to defense counsel's characterization thereof, were not improper.  Thus, the prosecutor's comments on summation could not have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  See Darden, 477 U.S. at 181.  Accordingly, this basis for habeas relief is denied.

In sum, the Court finds that prosecutorial misconduct did not deprive Petitioner of his constitutional right to a fair trial. The state court's determination of this issue was neither contrary to nor an unreasonable application of settled Supreme Court law. This claim is therefore denied.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),  I decline to issue a certificate of

appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    September 14, 2009
          Rochester, New York